STATE WHOLESALE GROCERS, a corporation, et al., Plaintiffs,

v.

GREAT ATLANTIC AND PACIFIC TEA COMPANY, a corporation, et al., Defendants.

No. 56 C 418.

United States District Court
N. D. Illinois, E. D.

Sept. 8, 1959.

Marks, Marks & Kaplan, Libit, Lindauer & Henry, Chicago, Ill., for plaintiff.

· · Thomas R. Mulroy, Hopkins, Sutter, Owen, Mulroy & Wentz, Miller, Gorham, Wescott & Adams, McBride & Baker, Weinke & Schlosser, Chicago, Ill., for defendants.

CAMPBELL, Chief Judge.

On remand of this case from the Court of Appeals, plaintiffs have moved for a ruling on the so-called "spurious class" suit issue left undecided both by this Court and the Court of Appeals. State Wholesale Grocers v. Great Atlantic & Pacific Tea Company, D.C.N.D.Ill.E.D., 154 F.Supp. 471; 7 Cir., 258 F.2d 831. Since the pertinent facts appear in each of these reported decisions, I shall not repeat them in detail here.

· Plaintiffs consist of twenty retail grocers and two wholesale grocers located in the Chicago Metropolitan Area. They seek to bring into this action the retail and wholesale grocers similarly situated who accept their invitation to join. Defendants, General Foods Corporation, Hunt Foods, Inc., and Morton Salt Company oppose the propriety of the class suit contending 1) that plaintiffs have not shown that they are entitled to bring a spurious class suit and, 2) in the alternative, that it is too late at this stage of the instant proceeding for the intervention of additional parties plaintiff.

Rule 23(a) (3) of the Federal Rules of Civil Procedure, 28 U.S.C.A., which governs spurious class suits, provides as follows:

> "a. Representation. If persons constituting a class are so numerous as to make it impracticable to bring them all before the court, such of them, one or more, as will fairly insure the adequate representation of all may, on behalf of all, sue or be sued, when the character of the right sought to be enforced for or against the class is
>
> \*  ·\*  \*  \*  \*  \*
>
> (3) several, and there is a common question of law or fact affecting

the several rights and a common relief is sought

*Whether Plaintiffs Are Entitled To Bring A Class Suit*

Defendants contend that neither the retail grocer nor the wholesale grocer class has been adequately identified. I do not agree. As to the plaintiff retailers, I think it has been clearly established that the class consists of retail grocers situated in the Chicago Metropolitan Area who, during the period pertinent to this suit, resold products of the defendant suppliers in competition with at least one store of the favored retailer, A. & P., and to whom proportionately equal treatment was not made available. The wholesaler class consists of all wholesale grocers situated in the same area who, during that period, sold the defendant suppliers' products to members of the retailer class. I attach little significance to the fact that there may be certain differences between the various members of either class so long as there is a question of fact or law common to all members within that particular class.

The propriety of the class suit is also challenged on the ground that common relief is not sought against the defendants Counsel for defendants interpret the requirement of "common relief" as provided in Rule 23(a) (3) to mean that the claims of the plaintiffs must emanate from the same original source, citing Kainz v. Anheuser-Busch, Inc., 7 Cir., 194 F.2d 737, in support of their position. Defendants take the position that inasmuch as it is not claimed here that the three defendant suppliers have joined or acted together, the several claims of the plaintiffs emanate from three, separate and distinct sources, thus destroying the element of common relief.

A reading of the pertinent portion of the Court of Appeals' opinion in the Kainz case, supra, might prove helpful. In rejecting the contention that the phrase "common relief" means "joint relief", as that phrase is used in Rule

23(a) (3), the court stated, at page 743 of 194 F.2d:

"* * * 'Common relief' for persons having separate causes of action who may recover only several judgments, it seems to us, must mean, in order to give life to the purpose of the rule, relief emanating from the same original source, either by way of grant, contract, tort or statute, where the claims of all beneficiaries flow from the same fountain but are allowed not in a joint judgment but in several judgments. Strictly speaking, this may not be common relief in many senses, but it is separate relief for each growing out of a common source of right to recover. The same character of right to recover exists in several; in that sense, when there are common issues of fact and law, we think, the relief is common within the meaning of the rule. To hold otherwise is to destroy the so-called spurious class entirely, for, if the relief to be recovered by several members of the class in separate judgments must be a common or joint judgment, then the whole provision is meaningless. The rule clearly contemplates, we think, relief in the form of separate similar judgments, emanating from the same source in law and grounded upon common questions of fact."

In view of the language of the Kainz case, I think the Rule is satisfied where, as here, it is charged that the same, but separate, action by defendants of equal standing (that is, suppliers who have favored one customer over others) violated the same section of a statute, and that the unlawful action of each defendant damaged each of several plaintiffs in separate, different amounts.

Defendants also urge the Court to hold that the plaintiffs do not adequately represent the members of either of the two classes for whom this suit is brought. An examination of the entire record of this case convinces me that this contention is without merit.

*Whether The Proposed Intervention Is Untimely.*

It is argued that intervention at this point of the instant proceeding would be untimely since it comes at a time more than 3½ years after the suit was instituted and 2½ years after the proofs have been closed on the issue of liability. Defendants contend that it would be fundamentally unfair to them to allow intervention at this juncture of the case and caution that objectional procedural consequences might develop if such a practice is permitted.

Of course, defendants' contentions might be true in most cases. In the instant case, however, the issues of liability and damages were separated for purposes of trial. Trial of the issue of liability has been concluded. There is, at least, one element of the liability facet of this case which remains for decision. I think it clear that the joining of additional parties plaintiff at any earlier stage of the present case would have at that time served no useful purpose and might well have hampered, or at least delayed, the orderly and expeditious fashion in which the issue of liability was tried. With the separation of the issues of liability and damages for purposes of trial, Rule 23(a) (3) afforded the Court, as well as the parties, with an excellent mechanism whereby a handful of persons with a standing sufficient to complain might, on behalf of all such persons similarly situated, test the legality of the defendants' activity which affected all such persons. That activity having been branded as unlawful by the Court of Appeals, the time is now ripe for the intervention of all wronged parties.

A rule of procedure must possess a certain quality of usefulness. With respect to the Rule under consideration, it should, if nothing else, serve to speed up trial such as the instant suit, while at the same time avoid multiplicity of suits. Intervention of additional parties plain-

tiff before or during the trial of liability would have appreciably delayed the submission of that issue for decision and would have nullified one of the purposes for which the Rule was adopted. I think Judge Lindley's comments in the Kainz case, supra, with respect to Rule 20(a) and Rule 23(a) (3), are particularly apropos here. He said at page 744 of 194 F.2d:

"We fully appreciate the difficulty encountered by trial courts in attempting to give to these two rules the force we have attributed to them. Both, interpreted as we feel they must be, are innovations at odds with earlier ideas of proper law and equity practices. It was once axiomatic that multifariousness of claims was to be avoided and that multiplicity of parties could be permitted only in cases far afield from those of the so-termed spurious class. The latter, obviously, has unity only as an expedient invented and introduced into modern practice for the purpose of reducing multiplicity of suits and speeding up trials. We know the invention has novelty; whether it possesses also the other quality sought, utility, is not yet fully proved. However, sensing as we do that these novel insertions into our rules of procedure were inspired by certain specific supposedly beneficent purposes, it is our duty to give them effect. Perhaps in a case such as this, where each of the parties is entitled to a jury trial, where the transactions are voluminous, complex and intricate and the possible parties so numerous as to be beyond possibility of retention in the memory of any trier of the facts, it may eventuate that the expedient provided is not efficacious in improving practice and procedure. But that possibility does not authorize us so to interpret the rules as to nullify them."

I think the entire procedure employed in this case demonstrates most effectively that Rule 23(a) (3) possesses the quality for which Judge Lindley was searching; that is, the quality of utility. Defendants' conduct has been put to test and has been found unlawful. The facts elicited to test defendants' activity, as distinguished from the facts which establish the present plaintiffs' standing to complain, while being common to all present plaintiffs, should be common to all plaintiffs seeking to intervene. The latter must establish their standing to complain (that is, their membership in the class) and, like the present plaintiffs, the amount of their individual damages. That this comes at a date so long after the suit was instituted and the issue of liability tried is immaterial especially in view of the fact that most of this time was consumed in establishing the illegality of defendants' conduct before the Court of Appeals.

Intervention at this time, admittedly, presents its problems. However, I cannot concede that the Court, with the aid of able and experienced counsel, lacks the necessary tools to cope with them. It is no secret that the calendar of this court is already overcrowded. To force all plaintiffs who seek to intervene to file a new action, with its accompanying gamut of pre-trial discovery, would necessarily overburden the individual calendar of the particular judge of this court to whom it would be assigned, not to mention the fact that said action might later, perhaps, be consolidated with the instant one. At the same time, I cannot perceive how the defendants' rights would be prejudiced by intervention. If it shall later appear that any of those rights might be put in jeopardy, the resources of the court would be available to protect them. In summation, I think the procedures utilized in the instant case demonstrate most effectively the proper employment of the Rules and the tools available to a trial court. While I do not attempt to conclude that these pro-

cedures should be followed in every case such as this, since each case must be judged by its own peculiar facts, I do conclude that those procedures were most appropriate in the instant suit.

I am not unmindful that there is at least one issue that remains for decision. This issue, if decided in defendants' favor, would completely dispose of this suit. The other issues that may remain for decision might either bar some plaintiffs' rights if decided favorably to defendants or further define each class. It should be noted that what has been said in this memorandum shall be without prejudice to such of the issues as remain for the Court's decision.

For the reasons stated, the class suit issue is decided in plaintiffs' favor and the cause is set for pre-trial conference on September 28, 1959—4:00 p. m. for the purpose of setting a reasonable date within which additional plaintiffs must intervene or be barred.