**Lucille G. LESSARD and Robert F. Daniels, and All Other Persons Similarly Situated, Plaintiffs,**

v.

**METROPOLITAN LIFE INSURANCE COMPANY, Defendant.**

Civ. No. 83–0091 P.

United States District Court, D. Maine.

Dec. 10, 1984.

Jon Holder, Holder & Grover, Portland, Maine, Hugh Calkins, Dover-Foxcroft, Maine, for plaintiffs.

Howard H. Dana, Jr., Robert A. Moore, Gregg H. Ginn, Verrill & Dana, Portland, Maine, for defendant.

## ORDER GRANTING MOTION FOR CLASS CERTIFICATION

GENE CARTER, District Judge.

In this action Plaintiffs seek payment of long term disability benefits under the Borden, Inc. disability plan which was funded by Metropolitan Group Policy No. 23501–GS. These benefits have either been withheld or recouped by Metropolitan as a result of Plaintiffs' receipt of retroactive Social Security payments. The complaint also seeks relief under ERISA and the Social Security Act and seeks damages for bad faith and return of monies withheld from Plaintiffs as attorneys' fees in their Social Security actions. Plaintiffs brought this action on behalf of employees of Borden, Inc. (1) who participated in the disability plan from October 1, 1969; (2) who made a claim for disability benefits; (3) which was approved by Metropolitan; (4) received a retroactive award of Social Security Disability Insurance Benefits in a lump sum, and (5) either had their disability benefits reduced or were asked to remit monies to Metropolitan as a result of the Social Security awards. Plaintiffs also designated a subclass of individuals whose disability benefits were reduced or who were required to pay Metropolitan for part of their Social Security award that was withheld to pay attorneys' fees. It appears that Metropolitan has agreed to repay this money to the named plaintiffs. A final designated subclass consists of those members of the primary class whose disability benefits were reduced or who were required to pay monies to Metropolitan after Metropolitan received notice of the decision in *Bush v. Metropolitan Insurance Co.*, 656 F.2d 231 (6th Cir.1981). In that case the court construed language in a Metropolitan disability contract that was allegedly similar to the language at issue here and found that the retroactive Social Security payment could only be deducted from the disability payments in the month in which it was received, rather than on a month-by-month basis until it was fully recouped by the company. Section 7.1(B) of the Long Term Disability Plan, which is of significance here, provides:

The Monthly [LTD] Benefits otherwise provided for any period of disability shall be reduced by the aggregate of the following amounts paid or payable for the same period of disability or any part thereof

\*    \*    \*    \*    \*    \*

the monthly rate of any Social Security Benefits to which the Employee and/or any Dependent of the Employee is (or upon making timely and proper request and submitting due proof would be) entitled by reason of the Employee's disability, or the monthly rate of any old age Social Security Benefits received by the

Employee and/or any Dependent of the Employee upon election by the Employee.

\* \* \* \* \* \*

any workmen's compensation, employer's liability or similar law (including benefits which are a commutation of, or substitute for, periodic benefits, and including specific allowances for loss, or loss of use, of a bodily member).

Of the 207 potential plaintiffs, 53 are subject to compulsory counterclaims for what Metropolitan alleges are overpayments of the disability benefits. Metropolitan has filed a counterclaim against Plaintiff Lessard for overpayment due to a workers' compensation award she received.

■ The prerequisites to a class action are set forth in Fed.R.Civ.P. 23(a):

One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In general, Rule 23(a) should be liberally construed in order not to undermine the policies underlying the class action rule. *Weathers v. Peters Realty Corp.,* 499 F.2d 1197 (6th Cir.1974).

■ The fact that there are 207 potential class members distributed among 33 states and territories makes it clear that joinder of all members would be impracticable. Thus the first requirement of Rule 23(a) has been met.

All the potential plaintiffs and the named plaintiffs were party to the same contract and each of them has had disability claims approved by Metropolitan and Metropolitan subsequently has tried to recoup from them, either in a lump sum or through reduction in their disability payments, an amount equal to a retroactive payment made to them by Social Security for the

same disability. Since there are common questions of law concerning the contract and Metropolitan's standardized conduct with respect to the members of the proposed class, the commonality requirement has been met. *See Katz v. Carte Blanche Corp.,* 52 F.R.D. 510 (D.Pa.1971), *reversed on other grounds,* 496 F.2d 747 (3d Cir. 1974).

Defendant argues that the class should not be certified because the third requirement, that the claims of the named plaintiffs be typical of those of the purported class, is not met. Specifically, Defendant asserts that Plaintiff Lessard is not an appropriate plaintiff because she, among all the potential plaintiffs, is the only one who is subject to a compulsory counterclaim relating to workers' compensation benefits. Defendant relies primarily on *Koos v. First National Bank of Peoria,* 496 F.2d 1162 (7th Cir.1974). In that case the court refused to certify a class in which the plaintiffs' claims were possibly excepted from the challenged usury provisions and were, therefore, atypical: "Where it is predictable that a major focus of the litigation will be on an arguable defense unique to the named plaintiff or a small subclass, then the named plaintiff is not a proper class representative." *Id.* at 1164; *see also Zenith Laboratories, Inc. v. Carter-Wallace, Inc.,* 530 F.2d 508 (3d Cir.1976). The court in *Koos* expressed concern that much of plaintiffs' effort would necessarily have been devoted to showing that they did not fit within the exception, thus preventing them from devoting enough attention to the issue controlling for the rest of the class. *Koos,* 496 F.2d at 1165. Defendant argues that in this case Plaintiff will be concerned primarily with the counterclaim concerning workers' compensation benefits paid to her and will not be able to concentrate on her claims that are held commonly with the other plaintiffs.

Plaintiffs, on the other hand, rely on a case from the Eastern District of Pennsylvania in which the court found that plaintiffs' signing of an agreement to forbear, a unique defense, did not make plaintiffs'

claim atypical. *Zeffiro v. First Pennsylvania Banking & Trust Co.*, 96 F.R.D. 567 (E.D.Pa.1983). The court in *Zeffiro* stated that if a "plaintiff and each member of the represented group have an interest in prevailing on similar legal claims, ... particular factual differences, differences in the amount of damages claimed, or even the availability of certain defenses against a class representative may not render his or her claims atypical." *Id.* at 571. The *Zeffiro* court also set forth a standard which the Court finds to aid in making the *Koos* determination of when a defense or counterclaim will become a major focus of the litigation: "Where, as here, an alleged defense may affect the individual's right to recover, but it does not affect the presentation of the case on the liability issues for the plaintiff class, that defense should not make a plaintiff's claim atypical." *Id.* at 570.

In the instant case, the existence of the counterclaim will not hinder or affect Plaintiff's presentation of the case on the liability issues. Plaintiff has a distinct interest in challenging the lawfulness of Metropolitan's recoupment of the Social Security benefits. Moreover, her defense on the counterclaim will basically be the same as her presentation of her case in chief: i.e., an attempt to prove that proper construction of the Metropolitan contract does not permit total recoupment of other benefits paid to Plaintiff for the same disability. The substantive defenses raised to the counterclaim for workers' compensation appear to have general application as well to the Social Security overpayment counterclaim. *See* Answer to Counterclaim.

Defendants assert that Plaintiff Daniels is also atypical of the plaintiff class because he signed a settlement agreement, acknowledging the overpayment and assigning Metropolitan the proceeds of his life insurance policy. This fact pattern seems to fall squarely within the situation described in *Zeffiro*, whereby a minor factual matter may affect the ultimate right to recovery but not the presentation of the liability issues.

Defendant also asserts that plaintiffs cannot meet the fourth requirement of Rule 23(a) that they be able to fairly and adequately protect the interests of the class. Initially, Defendant suggests that Plaintiff Lessard will be more likely to delay or to want to settle because she is subject to the workers' compensation counterclaim. Although Plaintiff may be susceptible to settlement proposals, she is no more so than any other plaintiff. In fact, in her deposition she stated explicitly: "I feel that I should go along with the case. I am not giving it up no matter what." Lessard Deposition at 66–67.

Defendant also asserts that Plaintiff does not understand the nature of the case well enough, is too dependent on counsel, and is financially unable to adequately represent the class. The record does show that Plaintiff routinely has let her counsel handle her disability matters, because she was too sick to look after them. There is also testimony showing that she is an avid champion of her class. She stated that she had told her counsel that she "wanted to see that Metropolitan be fair to everybody else and that they should, you know, stop doing the things they did to me to the other people too. I talked to him several times about that." *Id.* Although Plaintiff may be unschooled in the law, it appears she has an ongoing dialogue with counsel and that she is willing and eager to represent the class. Similarly, although the record demonstrates that she is not a rich woman, she has discussed both with her husband and her attorney her financial responsibilities as the representative of the class. *Id.* at 72.

There is a sharp division of authority on the extent to which the personal characteristics of the representatives of the class should affect the determination of their ability to adequately represent the class. This is typified by the decisions relied upon by the parties in this case, one from the Eastern District of Pennsylvania and another contradictory one from the Middle District of the same state. *See In Re Goldchip Funding*, 61 F.R.D. 592 (M.D.Pa.

1974); *Dorfman v. First Bank of Boston Corp.*, 62 F.R.D. 466 (E.D.Pa.1974).

This Court declines, as a matter of policy, to preclude persons from representative status solely because they lack erudition or financial resources. Plaintiff Lessard's deposition shows her to be, at the very least, a person highly interested in the litigation and probably as conversant with the legal issues as her limited education will allow. Plaintiff's financial resources appear to be small. Many of the costs have already been incurred, and the notice costs will not be prohibitive. Defendant expresses an interest in recovering its fees and costs under ERISA if it should prevail. In that situation, an award is discretionary, 29 U.S.C. § 1132(g), based on several factors including the ability of the charged party to pay. *See, e.g., Miles v. New York State Teamsters Conference Pension and Retirement Fund Employee Pension Benefit Plan*, 698 F.2d 593 n. 2 (2d Cir.1983). Potential for an adverse discretionary ruling on attorneys' fees at the end of litigation is not adequate reason to deny certification of the class.

Defendant asserts the same failings in Daniels as a representative of the class. The Court, however, finds no reason to believe that Daniels will not adequately represent the class. Daniels' deposition, too, indicates a poor, disabled individual of limited education. He understands the suit to concern Metropolitan's wanting to get back his Social Security money. "They said they was entitled to it. But I don't think they was. That should belong to me because I paid in it for years before Metropolitan came in there." Daniels Deposition at 42. In addition to his belief that his claim should be vindicated, the Court finds it significant that Daniels, a Delaware resident, consulted with another lawyer before consenting to join the suit as a representative. This demonstrates that he has not approached his representative status lightly.

In addition to meeting the Rule 23(a) prerequisite to a class action, as Plaintiffs have, it is necessary that the proposed class actions fit into one of the three categories set forth in subsection (b). The pertinent category in the instant case is that delineated in Rule 23(b)(3) which provides for certification when:

the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Defendant argues that there are numerous individual issues of fact and law which outweigh the common ones previously articulated. It points first to the possibility that some of the putative plaintiffs' claims may be barred by the applicable statutes of limitations. In general, courts have been reluctant to deny certification merely because affirmative defenses *may* be available against individual members of the class. *Lorber v. Beebe*, 407 F.Supp. 279 (S.D.N.Y.1976); *Zeigler v. Gibralter Life Insurance Co.*, 43 F.R.D. 169, 173 (D.S.D. 1967). Although Defendant raises the spectre of a multitude of limitations problems, the application of any appropriate statute of limitations should be a relatively straightforward matter since the dates on which Metropolitan attempted to recoup the disputed disability payments appear to be known to the parties. Plaintiffs have alleged no fraud which would inject extensive factual questions into the limitations determination. Moreover, even in instances where individual issues of knowledge and discovery are part of the limitations determination, courts have found that they do not necessarily defeat the predomination of important common questions that represent a significant aspect of the case. *See, e.g., Cameron v. E.M. Adams*, 547 F.2d 473 (9th Cir.1976). If during the litigation the Court determines that certain class members are barred by the statute of limitations, it has the flexibility to exclude those individuals from the class, *Cohen v. District of Columbia National Bank*, 59 F.R.D. 84 (D.D.C.1972); *Zeigler v. Gibral-*

*ter Life Insurance Co.*, 43 F.R.D. at 178, or, if necessary, to decertify the class. *Id.*

Defendant also contends that individual issues are generated by the ERISA claim because ERISA requires that a plaintiff exhaust administrative remedies before relief is sought in federal court. 29 U.S.C. § 1133. As Plaintiffs point out, the primary question raised by Defendant here is not an individual one, but a common one of whether the requirement of exhaustion of administrative remedies, which ostensibly pertains to "any participant whose claims for benefits has been denied," applies to the situation alleged in the Complaint. *See, id.;* 29 C.F.R. Part 2560. If the section is found to apply, the factual determination of whether an individual member of the class has exhausted his administrative remedies is a mechanical one which would pose little difficulty for the Court.

Similarly, the Court does not find that issues surrounding the execution of reimbursement or settlement agreements by many of the putative plaintiffs will engage the Court in individual issues that will overwhelm the common liability issue that must be determined by construction of the disputed contract language. The common issue of liability under the contract is logically prior to any determination of the validity of the form reimbursement agreement and other settlement agreements. As noted previously, such matters of affirmative defense should not generally be permitted to defeat class certification. That is particularly so where a discrete issue such as the effect of these agreements depends in part on resolution of the common issue and can be reserved for resolution at the end of that aspect of the liability determination.

The final issues which Defendant suggests raise overwhelming individual questions are ascertainment of which type of six possible nonplan benefits the putative plaintiffs received, whether specific benefits are owed to Defendant, and, if so, their value. All of these issues relate to Defendant's counterclaims. In arguing that its counterclaims are compulsory, Defendant described them as mirror images of the Plaintiffs' claims, raising the same issues of fact and law and relying on the same evidence. The Magistrate accepted this characterization, stating: "The counterclaim arises out of the same transaction or occurrence that furnishes the basis for the plaintiffs' Complaint: the defendant's obligation to pay disability benefits under the plan, properly calculated." Report of Hearing on Motions (Jan. 25, 1984). It is clear that rather than presenting numerous individual issues, the counterclaims and Plaintiffs' claims present common issues. The fact that individual questions as to damages might remain does not bar class certification where, as here, after a resolution of liability, their calculation is virtually a mechanical task. *See Blackie v. Barrack*, 524 F.2d 891 (9th Cir.1975). The situation here of determining the amount of overpayment if liability is established on the counterclaims is very different from one in which damages cannot be mathematically derived and a minitrial is required to determine each class member's damages. *See, e.g., Shaw v. Mobil Oil Corp.*, 60 F.R.D. 566 (D.N.H.1973).

The Court, then, does not find that any one of the individual issues raised by Defendant poses a management problem significant enough to prompt a finding that individual issues predominate over the common issues raised by Plaintiffs' Complaint. Although Defendant has raised many issues, even when the Court considers them together, it cannot find that difficult management problems would arise which would outweigh the advantage of trying the significant common issues at one time for the class. Once a specific legal issue is determined, whether it be the applicable statute of limitations, the validity of the reimbursement or settlement agreements, or the necessity for exhaustion of administrative remedies, the actual individual determinations of how the legal decisions affect the members of the class will be reasonably simple, just as is the calculation of damages on the counterclaims if such calculation proves necessary. There is no need, however, that the common issues "be dispositive of the entire litigation. The fact

that questions peculiar to each individual member of the class may remain after the common questions have been resolved does not dictate the conclusion that a class action is not permissible." *Dolgow v. Anderson,* 43 F.R.D. 472 (E.D.N.Y.1968).

The common issues in this case represent a significant aspect of the case that can be resolved for all members of the class in a single adjudication. The claims of Plaintiffs and Defendant's counterclaims all focus on a common nucleus of operative facts. The Court finds, therefore, that common issues predominate and that there is adequate justification for dealing with the claims on a representative, rather than individual, basis. See 7 C. Wright & A. Miller, *Federal Practice and Procedure,* § 1778, 3A J. Moore, *Moore's Federal Practice,* § 23.45 at 23–332.

The Court further finds that a class action will be superior to other available methods for the fair and efficient adjudication of the controversy. As Defendant points out, many of the putative plaintiffs have small claims, which might not be practicable to litigate individually. Resolution in one forum of the common issue of construction of Metropolitan's long-term disability contract will avoid the necessity of its litigation in possibly two hundred other suits. Utilization of the class action device in this matter is certain to "achieve economies of time, effort and expense, and promote uniformity of decision as to persons similarly situated." Advisory Committee Notes to Rule 23.

The Court is sensitive to the concern expressed by Defendant for putative plaintiffs against whom Metropolitan will assert counterclaims, for if Defendant prevails, it will have in hand enforceable judgments against not only the named Plaintiffs, but also against fifty-one others. In order to prevent unfair surprise to these people, the Court orders that in addition to the notice required by Rule 23(c)(2), notice to the members of the class against whom counterclaims may be asserted shall include a thorough explanation in *plain language,* to be approved by the Court prior to sending of the notice, of the fact that a counterclaim will be asserted and of its potential effect in the event of a decision adverse to the class.

Accordingly, it is ORDERED that this action shall be permitted to go forward as a class action with Lucille Lessard and Robert Daniels as the named representatives of the class. It is FURTHER ORDERED that notice to those plaintiffs against whom a counterclaim will be asserted shall conform to the specifications described above and that Plaintiffs shall promptly seek the Court's approval of the content of the proposed notice.

So ORDERED.