**Guy CARRIER, et al., Plaintiffs,**

v.

**JPB ENTERPRISES, INC., Defendant.**

**No. Civ. 01–187–P–C.**

United States District Court,
D. Maine.

April 5, 2002.

---

Jeffrey Neil Young, McTeague, Higbee, Macadam, Case, Watson & Cohen, Topsham, ME, for plaintiffs.

Michael Joseph Gartland, Marcus, Clegg & Mistretta, P.A., Portland, ME, for defendant.

## MEMORANDUM OF DECISION AND ORDER GRANTING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

GENE CARTER, District Judge.

Defendant JPB Enterprises ("JPBE") is a corporation organized under the laws of Florida and doing business within the state of Maine. Maine Poly, Inc. ("Maine Poly") is a wholly owned subsidiary of JPBE, which operated a manufacturing plant in Greene, Maine. Named Plaintiffs Guy Carrier, Jeff Kenney, Dan Ridley, and Ricky Surette are former employees of Maine Poly at its Greene, Maine facility. The individual Plaintiffs, Guy Carrier, Jeff Kenney, Dan Ridley, and Ricky Surette, bring this action on behalf of themselves and all other similarly situated employees terminated from employment due to a plant closing or mass layoff. On June 29, 2001, employees were informed that the Maine Poly facility would be closed effective July 6, 2001, explaining that some employees would be terminated immediately while others would be terminated by July 6, 2001. The named Plaintiffs were all terminated during the period from June 29, 2001, to July 6, 2001. Although it was promised that the employees who remained until July 6, 2001, would be paid their last week's wages, in early July 2001, Maine Poly filed for bankruptcy, and those Plaintiffs who had continued to work after the termination announcement were not paid their final week's pay.[1] Plaintiffs' claims against JPBE are under the Worker Adjustment and Retraining Notification Act ("WARN Act"), 29

---

1. On or about July 11, 2001, Maine Poly filed a Petition for Chapter 7 Bankruptcy with the Bankruptcy Court for the District of Maine.

U.S.C. § 2101 *et seq.* (Count I); the Maine Employment Practices Law, 26 M.R.S.A. § 630 *et seq.* (Count III); and the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* (Count IV). Now before the Court is Plaintiffs' Motion to Certify Class. *See* Docket No. 10.

Plaintiffs move for class certification, asserting that the requirements of Rule 23 are met here with the proposed class of approximately 123 class members. Defendant first objects to the class certification, arguing that the class is not so numerous that joinder of all members is impracticable. *See* Fed. R.Civ.P. 23(a)(1). Specifically, Defendant asserts that each count of Plaintiffs' Complaint has a subclass of individuals that have standing to assert the claim. For example, Defendant asserts that only 81 employees have claims for the final week's pay (Count III) and that only 71 members of the putative class were participants in the 401k plan at the time of the shut down (Count IV). In addition, Defendant argues that Plaintiffs fail to satisfy the requirement that common issues predominate. Finally, Defendant asserts that consideration of judicial economy, financial resources and the ability of the class to institute individual suits, geographical dispersion and identification of class members, the absence of injunctive relief for future class members, and the relatively small class size demonstrate that joinder is practicable and advisable in this case.

The basic requirements for maintaining a class action are set out in Federal Rule of Civil Procedure 23. This rule provides in pertinent part:

(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

. . .

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

After considering all the factors, the Court finds that class certification is warranted in this case. With respect to the numerosity requirement, while the absolute size of the class is not dispositive, a commentator has noted that a class of more than 40 individuals raises a presumption that joinder is impracticable. Herbert Newberg, NEWBERG ON CLASS ACTIONS § 3.05 at 3–25 (3rd ed.1992); *see also Town of New Castle v. Yonkers Contracting Co. Inc.,* 131 F.R.D. 38, 40 (S.D.N.Y.1990) (collecting cases). In this case, the WARN Act claim (Count I) is comprised of the entire class of 123 individuals. Moreover, although the other two claims may be actionable by less than the entire class, the number of individuals with actionable claims exceeds 40 on each claim. Thus, the Court concludes that the numerosity standard of Rule 23(a)(1) is satisfied.

The Court also finds that common issues control this case. It is clear that each of the three remaining claims will be decided on the same set of facts and legal principles for those individuals asserting such claim. *See* Fed.R.Civ.P. 23(a)(2). As this Court has previously noted, where common issues exist which can be resolved in a single forum, thereby avoiding the multiplicity of suits, a

class action will "achieve economies of time, effort and expense, and promote uniformity of decision as to persons similarly situated." *Lessard v. Metropolitan Life Ins. Co.,* 103 F.R.D. 608, 614 (D.Me.1984) (quoting Advisory Committee Notes to Rule 23). In addition to the estimated number of class members and the commonality of issues, the Court considers other factors when deciding whether to certify a class. With respect to the other relevant considerations, Plaintiffs concede that the class members are not geographically diverse and that the class members are readily identifiable; however, the factors of judicial economy and the ability of the members to institute individual suits weigh in favor of certifying the class. Finally, the Court concludes that the management of this action should be straightforward.

Accordingly, the Court **ORDERS** that Plaintiffs' Motion to Certify Class be, and it is hereby, **GRANTED**.